McCALLUM, J.
The Bank of Ruston ("Bank") has taken a suspensive appeal of a garnishment judgment ordering it to turn over certificates of deposit ("CDs") in its possession which the judgment debtor had used to secure a line of credit and a loan issued by the Bank. The Bank also appeals the denial of its motion for a new trial.
We reverse the garnishment judgment.
FACTS
Coretta McMillon and Roosevelt Norman filed suit in Monroe City Court against European Service, Inc., d/b/a European Motors and Ali Moghimi to rescind the sale of an automobile. A trial on the merits was conducted on January 12, 18, and 26, 2017. On January 26, the trial court informed the parties that it concluded the defendants had violated the Unfair Trade Practices Act and were liable for damages. The trial court ordered the parties to submit memoranda on the amount of damages that should be awarded. On May 5, 2017, judgment was rendered awarding damages of $ 22,855.23 plus attorney fees of $ 5,650.00 against defendants.
On March 20, 2018, McMillon and Norman filed a petition in Monroe City Court to make the judgment executory. They asserted that the amount owed by the defendants was now $ 32,930.28. They also asserted that they had reason to believe that the Bank along with Cross Keys Bank, First National Bank, and J.P. Morgan Chase Bank were indebted to or had control over property belonging to the defendants. A writ of fieri facias was issued against the financial institutions, which were made garnishees and ordered to answer the attached interrogatories.
Interrogatory number seven asked each financial institution if it had in its possession anything of value belonging to Ali Moghimi, a/k/a Gholamali Moghimi, which will become due to him at any time in the future. The description and the value of the property were also requested.
Interrogatory number eight asked each financial institution if it had made any payment whatsoever to Moghimi since the service of the seizure. The institutions were asked to itemize any such payments.
The Bank fax-filed its handwritten responses on April 11, 2018. In response to interrogatory number seven, the Bank replied:
*377 Yes. CD $41,959-0115047972 CD $51,727-4000000670 Pledged to secure loans at respondent Bank.
Any reply to interrogatory number eight from the Bank was cut off from the page bottom of the fax-filed responses.
A hard copy with handwritten responses was filed by the Bank with the court on April 16, 2018. The Bank replied "None" to interrogatory seven. In response to interrogatory eight, the Bank answered:
Yes CD-$41,959 0115047972 CD-$51,727 4000000670 Pledged to secure loans at respondent Bank.
On April 18, 2018, McMillon and Norman filed a petition for a judgment of garnishment against the Bank. A judgment of garnishment was entered, and the Bank was ordered to deliver to McMillon and Norman all property belonging to and payable to Moghimi in its possession as of the date of the service of the garnishment up to the full sum of $ 32,930.38.
On April 27, 2018, the Bank filed amended answers to the interrogatories:
AMENDED ANSWER TO INTERROGATORY NO. 7 :
Yes. Respondent is in possession of two Certificates of Deposit (CD - $ 41,959 - 0115047972 and CD - $ 51,727 - 7000000670) that are pledged to secure loans at Bank of Ruston.
AMENDED ANSWER TO INTERROGATORY NO. 8:
No.
On that same date, the Bank also filed a motion for new trial and, in the alternative, a motion to release the property from seizure. The Bank argued that not only did it hold a superior lien or privilege over the CDs, but that any payment made subject to the garnishment was to be to the City Marshal in accordance with La. C.C.P. art. 2415, not to McMillon's and Norman's attorney.
In response to a May 2, 2018, request for production of documents from McMillon and Norman, the Bank stated that it possessed two CDs that were pledged to secure loans at the Bank. The Bank produced promissory notes, assignments of deposit accounts, change in terms agreements, and account snapshots for one loan and for one line of credit.
Gholamali Moghimi and Elham Moghimi had executed a promissory note with the Bank on May 3, 2014, for the principal amount of $ 50,525.00. This was loan number 9800012386, and it had a maturity date of April 2, 2017. CD number 4000000670 was listed as its collateral. The assignment of deposit account for the loan reflected that a security interest had been granted in CD account number 4000000670, which had an approximate balance of $ 50,000.00. A change in terms agreement had been executed on April 1, 2017. The account snapshot showed a remaining loan balance of $ 30,877 on June 1, 2018.
Gholamali Moghimi had executed a promissory note for a line of credit with the Bank on January 27, 2017, for the amount of $ 201,575.00. This was attendant to loan number 9900003528, which had a maturity date of January 27, 2018, and listed CD number 0115047972, an airplane, and Moghimi's business as its collateral.
*378 The assignment of deposit account for the line of credit reflected that a security interest had been granted in CD account number 0115047972, which had an approximate balance of $ 41,959.00. A change in terms agreement was executed on January 26, 2018. The account snapshot showed a remaining loan balance of $ 29,933.00. on May 29, 2018. The assignments for both loans contained cross-collateralization provisions.
Layne Weeks, an officer with the Bank, testified at the hearing on the motion for a new trial that Moghimi was a customer of the Bank. He explained that the change in terms agreements were executed because the original promissory notes had matured and the parties wanted to extend the due date. Weeks also explained that he had written the answers to the interrogatories in the incorrect spaces, and an amended answer was filed when the Bank realized the error. According to Weeks, the Bank had made no effort to collect on either promissory note because the loan and line of credit were current.
The request for a new trial was denied.
DISCUSSION
A garnishment proceeding is a streamlined legal process that permits seizure of a judgment debtor's property in the hands of a third party. Ascension Credit Union v. Babin , 2014-1653 (La. App. 1 Cir. 11/6/15), 183 So.3d 544.
The trial court was clearly wrong in rendering the judgment of garnishment. As shown in the fax-filed responses to the interrogatories, the Bank claimed to have in its possession CDs belonging to Moghimi that had been pledged to secure loans at the Bank. Furthermore, the trial court abused its discretion in denying the Bank's motion for new trial. The documents submitted in response to the request for production of documents that was received after the garnishment judgment clearly showed the dates that the CDs were assigned to secure the loan and line of credit. Therefore, the Bank had an existing security interest in the CDs before McMillon and Norman filed their petition to make the money judgment executory. As such, the Bank's security interest in the CDs was superior to that asserted by the judgment creditors.
McMillon and Norman maintain that the Bank had no interest in the CDs and that the pledge of the CDs merely gave the Bank the right to seize them in the event that Moghimi defaulted on his loans. They assert that the CDs remained in Moghimi's name and the Bank did not have possession of the CDs because a default had yet to occur.
The Bank counters that it was not required to seize the CDs in order to have a priority security interest in them. The Bank argues that its security interest in the CDs was attached by the pledge agreements and, citing La. R.S. 10:9-312, perfected by control.
We conclude that the Bank was not required to seize the CDs following a default in order for its security interest to become effective and superior to the claims asserted by McMillon and Norman. Moreover, to the extent that McMillon and Norman are arguing that the Bank's security interest had not been perfected, that argument is without merit.
A certificate of deposit is "an instrument containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money. A certificate of deposit is a note of the bank." La. R.S. 10:3-104(j).
Although the Bank captioned the documents as assignments of deposit accounts, in most circumstances a certificate of deposit *379 is characterized as an "instrument" under Chapter 9 of Title 10, the "Uniform Commercial Code-Secured Transactions." As defined in La. R.S. 10:9-102(a)(47), an instrument is:
[A] negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment. The term includes a collateral mortgage note and a negotiable certificate of deposit ....
Emphasis added.
A "deposit account" is defined in La. R.S. 10:9-102(a)(29) as "a demand, time, savings, passbook, or similar account maintained with a bank. The term does not include investment property or accounts evidenced by an instrument." The Official Revision Comment to La. R.S. 10:9-102 states, in part:
(29) Deposit Account. (a) .. Former Chapter 9 excluded "an account evidenced by a certificate of deposit" from being a deposit account. See former R.S. 10:9-105(e). The revised definition goes further and specifically excludes all accounts evidenced by an "instrument" .... The revised definition clarifies the proper treatment of nonnegotiable or uncertificated certificates of deposit. Under the definition, an uncertificated certificate of deposit would be a deposit account (assuming there is no writing evidencing the bank's obligation to pay) whereas a nonnegotiable certificate of deposit would be a deposit account only if it is not an "instrument" as defined in this section (a question that turns on whether the nonnegotiable certificate of deposit is "of a type that in ordinary course of business is transferred by delivery with any necessary indorsement or assignment.") A deposit account evidenced by an instrument is subject to the rules applicable to instruments generally.
Emphasis added.
Nonetheless, for purposes of our review, it does not matter whether the assignment in this matter was of a deposit account or of an instrument. "[A] security interest in a deposit account may be perfected only by control[.]" La. R.S. 10:9-312(b)(1). A secured party has control of a deposit account when it is the bank where the deposit account is maintained. La. R.S. 10:9-104(a)(1). In this instance, the CD accounts are with the Bank.
A secured party may perfect a security interest in an instrument by taking possession of the collateral. La. R.S. 10:9-313(a). The Bank stated in its fax-filed answer and in its amended answer that it had in its possession CDs belonging to Moghimi. At the hearing on the motion for new trial, Weeks answered "correct" when asked by the attorney for McMillon and Norman if the CDs were still in possession of the bank. We note that during redirect examination by the Bank's attorney, Weeks testified that the Bank did not actually possess the CDs as they were assigned, but the remainder of his answer on this point was inaudible to the court reporter. However, considering that Weeks' answer was incomplete, and in light of his earlier answer at the hearing as well as the Bank's interrogatory responses that the CDs were in the Bank's possession, we cannot state that the CDs were not in the possession of the Bank. Accordingly, any argument that the Bank's security interests in the CDs were not perfected is meritless.
CONCLUSION
With each party to bear its own costs, the judgment of garnishment is REVERSED
*380 and the CDs are ordered released from seizure.